## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

| | |
|---|---|
| KIRSCH RESEARCH AND DEVELOPMENT, LLC, | |
| Plaintiff, | ▇▇▇▇▇▇▇▇ |
| vs. | Civil Action No. 5:20-cv-00057-RWS |
| DUPONT DE NEMOURS, INC.; E.I. DU PONT DE NEMOURS AND COMPANY, | **LEAD CASE** |
| Defendants. | |
| KIRSCH RESEARCH AND DEVELOPMENT, LLC, | |
| Plaintiff, | |
| vs. | Civil Action No. 5:20-cv-00058-RWS |
| FT SYNTHETICS, INC., | **CONSOLIDATED CASE** |
| Defendant. | |

## DEFENDANTS' MOTION FOR MANDATORY AND DISCRETIONARY STAYS PENDING DISPOSITION OF RELATED PROCEEDINGS BEFORE THE <u>UNITED STATES INTERNATIONAL TRADE COMMISSION</u>

## Table of Contents

Page

I.    INTRODUCTION ................................................................................................ 2

II.   FACTUAL BACKGROUND ............................................................................. 3

      A.    Kirsch's Three Actions against DuPont and FTS ................................. 3

      B.    Both the '482 and '251 Patents Concern Roof Underlayments and Their
            Composition ............................................................................................. 4

      C.    ███████████████████████████████████████████
            ████████████████████████████ ................................................. 6

III.  ARGUMENT ...................................................................................................... 7

      A.    Kirsch's Claims regarding the '251 Patent against DuPont Must Be Stayed
            Pursuant to 28 U.S.C. § 1659(a) ............................................................ 7

      B.    Kirsch's '482 Patent Infringement Claims Should Also Be Stayed ....... 8

            1.    Kirsch Will Not Be Unduly Prejudiced or Disadvantaged by a
                  Stay of Its Claims Concerning the Expired '482 Patent ............................. 9

            2.    A Stay Will Simplify the Issues and Trial, and Avoid Duplicative
                  Litigation ................................................................................................ 11

            3.    Discovery Has Not Begun and a Trial Date Has Not Been Set ............... 15

IV.   CONCLUSION.................................................................................................. 15

# Table of Authorities

Page(s)

## Cases

*Alloc, Inc. v. Unilin Décor N.V.*,
　Case No. 03-253-GMS, 2003 WL 21640372, *3 (D. Del. July 11, 2003) ............................... 15

*Arris Enters. LLC v. Sony Corp.*,
　Case No. 17-cv-02669, 2017 WL 3283937, at **2-4 (N.D. Cal. Aug. 1, 2017) .......... 11, 12, 13

*Arris Sols., Inc. v. Sony Interactive Entm't LLC*,
　Case No. 5:17-cv-01098, 2017 WL 4536415, at *2 (N.D. Cal. Oct. 10, 2017) ................ 10, 13

*Avago Techs. U.S. Inc. v. IPTronics, Inc.*,
　Case No. 5:10-cv-02863-EJD, 2013 WL 623042, at *2 (N.D. Cal. Feb. 15, 2013) ....... 8, 11, 15

*Black Hills Media, LLC v. Samsung Elecs. Co. Ltd.*,
　Case No. 2:13-cv-379-JRG-RSP (E.D. Tex. Mar. 17, 2014) ......................................... 8, 11, 15

*Certain Synthetic Roofing Underlayment Products and Components Thereof*,
　Inv. No. 337-TA-1202 .......................................................................................................... 1, 15

*Enter. Sys. Techs. S.a.r.l. v. Motorola Mobility Holdings, Inc.*,
　Case No. 6:14-cv-553-MHS (E.D. Tex. Nov. 4, 2014) ...................................................... 8, 10

*E-Watch, Inc. v. Lorex Canada, Inc.*,
　Case No. H-12-3314, 2013 WL 5425298, at *2 (S.D. Tex. Sept. 26, 2013) ........................... 10

*FormFactor, Inc. v. Micronics Japan Co., Ltd.*,
　Case No. CV-06-07159, 2008 WL 361128, *2 (N.D. Cal. Feb. 11, 2008) .............................. 12

*Graphic Props. Holdings, Inc. v. Toshiba Info. Sys., Inc.*,
　Case No. 12-213-LPS, 2014 WL 923314, at *2 (D. Del. Mar. 5, 2014) ........................... 12, 13

*Hyosung TNS Inc. v. Int'l Trade Comm'n*,
　926 F.3d 1353 (Fed. Cir. 2019) ................................................................................................. 9

*In re Princo Corp.*,
　478 F.3d 1345 (Fed. Cir. 2007) ................................................................................................. 7

*Landis v. N. Am. Co.*,
　299 U.S. 248 (1936) ................................................................................................................... 8

*Micrografx, LLC v. Google, Inc.*,
    Case No. 3:13-cv-3595, 2014 WL 12580455, at *1 (N.D. Tex. July 9, 2014) ........................... 9

*Regents of Univ. of Minn. v. LSI Corp.*,
    Case No. 5:18-cv-00821-EJD, 2018 WL 2183274, at *3 (N.D. Cal. May 11, 2018) .............. 10

*SanDisk Corp. v. Phison Elecs. Corp.*,
    538 F. Supp. 2d 1060 (W.D. Wis. 2008) ........................................................................... 8, 14

*Saxon Innovations, LLC v. Palm, Inc.*,
    Case No. 6:09-cv-272, 2009 WL 3755041, at *2 (E.D. Tex. Nov. 4, 2009) ............................. 8

*Sears, Roebuck & Co. v. Stiffel Co.*,
    376 U.S. 225 (1964) ................................................................................................................... 9

*Sorensen v. Lexar Media, Inc.*,
    No. C 08-00095, 2009 WL 10695750, at *2 (N.D. Cal. Feb. 25, 2009) .................................. 9

*Spa Syspatronic, AG v. Verifone, Inc.*,
    Case No. 2:07-cv-416, 2008 WL 1886020, at *1 (E.D. Tex. April 25, 2008) ....................... 8, 9

*Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co., Ltd.*,
    754 F.2d 345 (Fed. Cir. 1985) .................................................................................................. 9

## **Statutes**

28 U.S.C. § 1659(a) .......................................................................................................... 1, 2, 7

Pursuant to 28 U.S.C. § 1659(a) and the Court's inherent authority to control its docket, Defendants DuPont de Nemours, Inc. and E.I. du Pont de Nemours and Company (together, "DuPont"") and FT Synthetics, Inc. ("FTS") respectfully[1] request that the Court stay these consolidated actions in their entirety pending final determination of the United States International Trade Commission's investigation in *Certain Synthetic Roofing Underlayment Products and Components Thereof*, Inv. No. 337-TA-1202 ("the ITC investigation").

Plaintiff Kirsch Research and Development, LLC ("Kirsch") alleges in the ITC Investigation that DuPont infringes U.S. Patent No. 8,765,251 (the "'251 patent"). The '251 patent is one of two patents that Kirsch accuses DuPont of infringing in the present civil action. This action is required to be stayed as to the '251 patent pending final disposition of the ITC investigation, pursuant to §1659(a).[2] Kirsch does not oppose the mandatory stay of the '251 patent. DuPont and FTS additionally request that the Court exercise its discretionary power to stay Kirsch's respective claims of infringement against DuPont and FTS regarding U.S. Patent No. 6,308,482 (the "'482 patent"), which expired on March 15, 2020, due to their significant factual and evidentiary overlap with Kirsch's '251 patent infringement claims that are subject to the mandatory stay. As set forth below, all of the factors this Court must consider when determining whether to exercise its discretion to stay a parallel proceeding weigh strongly in favor of staying the allegations against DuPont and FTS in their entirety.

---

[1] DuPont and FTS filed unopposed motions to consolidate the above-captioned cases for all purposes, including trial, on June 23, 2020, and the Court granted the motions to consolidate on June 24, 2020.  (*See* Lead Case, Dkt. No. 24.)

[2] Although Defendant E.I. du Pont de Nemours and Company does not make, sell, offer for sale, or import into the United States any of the accused synthetic roofing underlayment products, it nevertheless joins in this motion as a currently named Defendant.

**DEFENDANTS' MOTION TO STAY** – Page 1

I.    **INTRODUCTION**

At the same time that Kirsch sued DuPont for infringing the '251 and '482 patents in this Court, it also accused DuPont at the ITC of infringing the '251 patent with the exact same products accused here. Because the issues regarding the '251 patent are identical in both proceedings, 28 U.S.C. § 1659(a) mandates—and Kirsch does not oppose—staying Kirsch's claims against DuPont as to the '251 patent pending final determination of the ITC investigation.

The Court should additionally exercise its discretion to stay proceedings as to the '482 patent against both DuPont and FTS pending final determination at the ITC. Other than wanting to force DuPont and FTS to incur the expense of defending or otherwise participating in multiple parallel litigations, Kirsch has no good reason to oppose this stay. The '482 patent expired before Kirsch even brought these cases against DuPont and FTS, and Kirsch's recovery (if any) is therefore limited to the time period preceding the patent's expiration. Because there can be no continued infringement of an expired patent, Kirsch will not suffer undue (or any) prejudice if the '482 patent infringement claims are also stayed. That resolution of Kirsch's claims as to the '482 patent will be delayed is an insufficient basis to deny a stay, particularly where Kirsch caused that delay by filing separate suits and waiting until after the patent expired to do so.

Furthermore, a stay of the claims as to the '482 patent will not only simplify the issues, but also avoid duplicative litigation, preserving party and judicial resources. The '482 and '251 patents are directed to the same subject matter (roof underlayments and their composition), issued to the same sole inventor, and asserted against the *identical* DuPont synthetic roof underlayment products, ████████████  ████████████████. Indeed, Kirsch's infringement charts for the '482 patent submitted with the Complaint against DuPont *cite back exclusively to Kirsch's infringement charts for the '251 patent*, thus demonstrating the significant overlap between Kirsch's infringement theories for both patents. FTS ████████████████

████████████████ products ██████████████████████████████████████████████████

are accused of infringing the *same claims of the '482 patent as DuPont's products*. Kirsch's patent

infringement allegations against DuPont and FTS will therefore significantly overlap in terms of

discovery, document production, fact and expert witnesses, claim construction, non-infringement

and invalidity defenses. Although Kirsch did not assert the '251 patent against FTS's ████████

products, ██████████████████████████████████████████████████

██████████████████████████████.

Proceeding on the '482 patent now against either DuPont or FTS, only to then proceed on

the '251 patent against DuPont (████████████████) after the ITC investigation concludes

would result in a tremendous waste of resources, with duplicative hearings, status conferences,

document productions, claim construction hearings, tutorials, motions practice, and trials. In

addition to preventing such duplication, a stay will also ultimately simplify the issues in the above-

captioned cases as the ITC investigation will inform the parties and the Court here once it

concludes. A stay will also avoid inconsistent results and factual findings regarding the common

issues that permeate both patents, the identical DuPont products accused in both proceedings.████

██████████████████████████████.

Finally, neither the parties nor the Court have invested significant resources in the two

cases before it, which are both still at the pleadings stage with no answer having yet been filed.

Staying these consolidated cases in their entirety is warranted under these circumstances.

## II.    FACTUAL BACKGROUND

### A.    Kirsch's Three Actions against DuPont and FTS

On April 24, 2020, Kirsch sued DuPont in this Court for direct and indirect infringement

of the '251 and '482 patents. (Lead Case, Dkt. No. 1.) Kirsch accused DuPont's "Tyvek Protec

line of synthetic underlayment products, including Tyvek Protec 120, Tyvek Protec 160, and

Tyvek Protec 200" ("DuPont Products") of infringing "at least claims 1 and 11" of the '251 patent and "at least claims 1 and 2" of the '482 patent. (*Id.*, ¶¶ 51-52, 61-62.)

That same day, Kirsch also sued FTS in this Court for direct and indirect infringement of the '482 patent. (Consolidated Case, Dkt. No. 1.) Kirsch accused FTS' "line of synthetic underlayment products, including Silver, Gold, Platinum, Platinum HT-SA, and Pro-20" ("FTS Products") of also infringing "at least claims 1 and 2" of the '482 patent. (*Id.*, ¶¶ 39-40.)

Also on April 24, Kirsch filed a Complaint against DuPont (and others) at the ITC. (Ex. A, ITC Complaint.) There, Kirsch accused DuPont of directly and indirectly infringing "claims 1-8, 11, 12, and 14-19" of the '251 patent with the same DuPont Products accused here. (*Id.*, ¶¶ 73-75.) On May 27, the ITC issued a notice, dated May 26, instituting Investigation No. 337-TA-1202 and naming DuPont (among others) as Respondents. (Ex. B, ITC Institution Notice.) The notice was published in the Federal Register on June 1, 2020. (Ex. C, Federal Register Notice.)

**B.    Both the '482 and '251 Patents Concern Roof Underlayments and Their Composition**

The '482 and '251 patents both name a single inventor, Mark C. Strait. (Ex. D, '482 patent at (76); Ex. E, '251 patent at (75)). Both patents are directed to a roof underlayment. (Ex. D at Title ("Reinforced *Roof Underlayment* and Method of Making the Same"); Ex. E at Title ("Slip Resistant *Roof Underlayment*") (emphases added)). As taught by both patents, "[r]oofing structures for buildings typically include an underlayment positioned between a roof support deck and an overlayment." (Ex. E at 1:18-20; Ex. D at 1:20-22.) The "overlayment, such as asphalt shingles, tiles, wooden shakes, slate tiles, metal roofing, low-pitch polyurethane spray foam systems, or the like, is intended to provide protection from external weather conditions like wind, rainwater, and snowmelt." (Ex. E at 1:20-24; Ex. D at 1:22-25.) The "underlayment is installed between the roof deck and the overlayment, and it further protects against moisture and other

elements which may pass under the overlayment." (Ex. E at 1:24-27; Ex. D at 1:25-29.) The underlayment is similarly illustrated as being installed on a roof structure in each patent:



(Ex. E at Fig. 6 (element 62).)                    (Ex. D at Fig. 4A (element 40).)

The cross-sectional views of an embodiment of the claimed roofing underlayments in each patent likewise resemble one another:



(Ex. E at Fig. 1.)                          (Ex. D at Fig. 2.)

The claims of each patent recite a "roofing underlayment" and its composition. (*E.g.*, Ex. E at claim 1 ("A roofing underlayment comprising …"); Ex. D at claim 1.) And each claimed underlayment consists of at least a "scrim" and "at least one layer of thermoplastic material":

| | |
|---|---|
| 1. A roofing underlayment, comprising: | 1. A roofing underlayment positioned between a roof support structure and an overlayment, comprising: |
| a scrim formed from a woven polypropylene fabric; | a reinforcing scrim of interwoven strands for supporting tensile forces in multiple directions; and |

a top layer made from a non-woven spun-bond polypropylene fabric; and

a polypropylene coating consisting of polypropylene, the polypropylene coating applied in liquid form to bond the scrim to the top layer and to saturate the woven fabric of the scrim to form a waterproof bottom structural layer, wherein the top layer is pressed into the polypropylene coating of the bottom structural layer to form a micro-textured surface.

at least one layer of thermoplastic material affixed to a side of the reinforcing scrim by extrusion lamination for providing a weather-resistant barrier.

(Ex. E at claim 1.)                           (Ex. D at claim 1.)

**C.**



. (Declaration of Gary Sandhar ("Sandhar Decl."), ¶¶4-6.)

. (*Id.*, ¶7.)

. (*Id.*, ¶8.)

. (*Id.*, ¶8.) For example,

. (*Id.*, ¶9.)

. (*Id.*, ¶10.)

s. (*Id.*, ¶11.)

. (*Id.*, ¶12.)

███████████████████████. (*Id.*, ¶13.) ██████████████████████

██████████████████████. (*Id.*, ¶14.)

III.    <u>**ARGUMENT**</u>

A.    **Kirsch's Claims regarding the '251 Patent against DuPont Must Be Stayed Pursuant to 28 U.S.C. § 1659(a)**

28 U.S.C. § 1659(a) provides, in relevant part:

**(a) Stay.**—In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930, at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court ***shall stay***, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission, but only if such request is made within—

> **(1)** 30 days after the party is named as a respondent in the proceeding before the Commission…

28 U.S.C. § 1659(a) (emphasis added). A stay of the '251 patent claims against DuPont is mandated because (i) Kirsch has initiated a parallel Section 337 proceeding against DuPont before the ITC, in which DuPont has now been formally named as a Respondent; (ii) the claim against DuPont in the ITC investigation involves infringement allegations of the same '251 patent asserted against the same DuPont Products accused here; and (iii) the present motion is being filed within 30 days after DuPont was named as a respondent in the ITC investigation. Even the asserted patent *claims* overlap, with the Complaint against DuPont here alleging infringement of "at least claims 1 and 11," while the ITC Complaint alleges infringement of claims 1–8, 11, 12, and 14–19. (Lead Case, Dkt. No. 1, ¶ 61; Ex. A, ¶17.) Because the case against DuPont here and the ITC investigation involve Kirsch and the same DuPont entities, and overlapping patent infringement claims against the same products, a stay of the claims as to the '251 patent is required until the final determination of the ITC investigation. 28 U.S.C. § 1659(a); *In re Princo Corp.*, 478 F.3d 1345, 1355 (Fed. Cir. 2007) (Courts generally interpret 28 U.S.C. §1659(a) to require a mandatory stay when the claims

of the parallel actions involve the same issues about the same patent.) Kirsch does not oppose

staying the '251 patent proceedings.

### B.    Kirsch's '482 Patent Infringement Claims Should Also Be Stayed

Although the mandatory stay does not apply to Kirsch's claims on the '482 patent, the

Court should exercise its broad discretionary authority to stay them against both DuPont and FTS.

*Spa Syspatronic, AG v. Verifone, Inc*., Case No. 2:07-cv-416, 2008 WL 1886020, at *1 (E.D. Tex.

April 25, 2008); *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (the court has discretion to

dispose of causes "with economy of time and effort for itself, for counsel, and for litigants").

Indeed, "Congress explicitly intended that district courts should consider using their discretionary

power to stay patent infringement litigation that is related to, but not duplicative of, an action

before the ITC." *See, e.g.*, *Avago Techs. U.S. Inc. v. IPTronics, Inc*., Case No. 5:10-cv-02863-EJD,

2013 WL 623042, at *2 (N.D. Cal. Feb. 15, 2013).

Courts generally consider the following factors when deciding whether to exercise that

discretion: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the

nonmoving party, (2) whether a stay will simplify the issues and trial of the case, and (3) whether

discovery is complete and a trial date set. *Enter. Sys. Techs. S.a.r.l. v. Motorola Mobility Holdings,*

*Inc.*, Case No. 6:14-cv-553-MHS (E.D. Tex. Nov. 4, 2014), Dkt. No. 56 at 2 (citing *Saxon*

*Innovations, LLC v. Palm, Inc.*, Case No. 6:09-cv-272, 2009 WL 3755041, at *2 (E.D. Tex. Nov.

4, 2009), and granting a discretionary stay)); *Black Hills Media, LLC v. Samsung Elecs. Co. Ltd.*,

Case No. 2:13-cv-379-JRG-RSP (E.D. Tex. Mar. 17, 2014), Dkt. No. 63 at 1-2; *see also SanDisk*

*Corp. v. Phison Elecs. Corp.*, 538 F. Supp. 2d 1060, 1066-67 (W.D. Wis. 2008) (similar factors

warranted stay pending final determination in a parallel ITC proceeding). Each of those factors

weighs in favor of staying Kirsch's claims on the '482 patent.

1.    **Kirsch Will Not Be Unduly Prejudiced or Disadvantaged by a Stay of Its Claims Concerning the Expired '482 Patent**

Because the '482 patent expired on March 15, 2020—more than a month before Kirsch sued DuPont or FTS in this Court—the only relief to which Kirsch would be entitled should it prevail is retroactive, ending on the patent's expiration date. *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 230 (1964) (monopoly created by a patent expires when the patent expires, and the claimed technology can be used freely). Thus, while Kirsch inexplicably seeks injunctive relief regarding the '482 patent against DuPont and FTS, that remedy became unavailable to Kirsch with the patent's expiration. *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co., Ltd*., 754 F.2d 345, 347 (Fed. Cir. 1985) (injunctive relief moot where patent expired); *see also Hyosung TNS Inc. v. Int'l Trade Comm'n*, 926 F.3d 1353, 1357-59 (Fed. Cir. 2019) (the case "has become moot" after the patent expired because "the ITC's limited exclusionary order and cease and desist orders as to that patent have no further prospective effect").

Recovery of damages for any alleged ongoing infringement is also impossible for the same reason, thus restricting Kirsch's sole alleged remedy on the '482 patent to monetary damages for alleged infringement predating the patent's expiration. *Sorensen v. Lexar Media, Inc*., No. C 08-00095, 2009 WL 10695750, at *2 (N.D. Cal. Feb. 25, 2009) ("given that the…patent has otherwise expired, Plaintiff's remedies will be limited to damages already incurred from any alleged infringement"). Thus, there is no "prejudice that will inure to Plaintiff as the result of a stay, because damages will not continue to accrue during the period the stay is in place." *Id.*; *see also Micrografx, LLC v. Google, Inc.*, Case No. 3:13-cv-3595, 2014 WL 12580455, at *1 (N.D. Tex. July 9, 2014) (no undue prejudice from stay where patent is expiring, infringement damages are primarily monetary, and the right to such damages is not affected by the patent's expiration); *Spa Syspatronic*, 2008 WL 1886020, at *2 (no undue prejudice from stay of infringement action

pending reexamination where the patent will expire before trial and monetary damages provide adequate measure of damages).

Furthermore, the '482 patent's sole inventor, Mark C. Strait, is also Kirsch's founder. Kirsch obtained the rights to the patent in 2009, and had knowledge of it long before that time through its founder, Mr. Strait. (Ex. F, '482 Patent Assignment.) Despite that knowledge, Kirsch waited until after the '482 patent expired to bring these actions against DuPont and FTS, and should therefore not be heard to complain that it would be harmed by a stay in the first place.

Nor can Kirsch reasonably claim undue prejudice or disadvantage as a result of evidence being less readily available, or memories fading, from staying its claims on the '482 patent. The '482 patent had a 20-year life-span before it expired prior to these actions against DuPont and FTS being filed. To the extent any evidence is lost, such loss would have likely already occurred. *See Regents of Univ. of Minn. v. LSI Corp.*, Case No. 5:18-cv-00821-EJD, 2018 WL 2183274, at *3 (N.D. Cal. May 11, 2018). Any additional loss of evidence during the stay is unlikely, as DuPont and FTS are required to preserve any evidence. Thus, "delay" is the only supposed "prejudice" of granting a stay to which Kirsch can point. But the mere fact of delay does not constitute undue prejudice or warrant denying a stay. *E-Watch, Inc. v. Lorex Canada, Inc.*, Case No. H-12-3314, 2013 WL 5425298, at *2 (S.D. Tex. Sept. 26, 2013). Indeed, "neither the length of delay nor the possibility that unspecified evidence could be lost translates to a serious form of harm, whether considered separately or cumulatively." *Arris Sols., Inc. v. Sony Interactive Entm't LLC*, Case No. 5:17-cv-01098, 2017 WL 4536415, at *2 (N.D. Cal. Oct. 10, 2017).

A stay would therefore not result in any prejudice or disadvantage to Kirsch, much less the "undue" prejudice necessary to warrant denying a stay, as this Court has previously found under similar circumstances. *See, e.g., Enter. Sys. Techs.*, Dkt. No. 56 at 2 (plaintiff "brought these

circumstances on itself by filing its ITC complaint on the same day it sued" defendants in the district court and "should have anticipated the possibility (if not the probability) of Defendants' seeking to stay the non-ITC portion of this case"); *Black Hills Media*, Dkt. No. 63 at 2 (same); *see also Avago*, 2013 WL 623042, at *3 (granting stay based in part on finding that any prejudice was "minimal and largely of [Plaintiff's] own making").

2.      **A Stay Will Simplify the Issues and Trial, and Avoid Duplicative Litigation**

As described above, the '482 and '251 patents are directed to the same subject matter—a roof underlayment and its composition. *See supra*, at § II.B. They were also issued to the same inventor. *Id.* The '251 patent is asserted against the DuPont Products and the '482 patent is asserted against those same DuPont Products and the ███████████ FTS Products. *See supra*, at § II (and the same claims of the '482 patent are asserted against both DuPont and FTS). As a result, the proceedings on the '482 and '251 patents are likely to involve overlapping terms of claim construction, prior art, expert and fact witnesses, and documents and other discovery. Kirsch concedes as much in its infringement charts for the '482 patent against DuPont, which ___rely___ ___exclusively on Kirsch's charts for the '251 patent___, demonstrating the significant overlap in its infringement theories for both patents. (Ex. G, Infringement Charts.)

"Forcing the parties to litigate the ['482] patent" while the '251 patent claims are stayed "would create additional discovery that goes beyond the mere effort of defending a lawsuit, and would prejudice" DuPont and FTS. *Arris Enters. LLC v. Sony Corp.*, Case No. 17-cv-02669, 2017 WL 3283937, at **2-4 (N.D. Cal. Aug. 1, 2017). "One example of potential overlapping discovery is the depositions of witnesses who are knowledgeable" regarding the identical DuPont Products involved here and at the ITC, as well as the "inventor." *Id*. ██████████████████ ████████████, overlapping depositions would have to be taken ████████████████

███████████████████████████████. *See supra*, at § II.C. Moreover, ████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████. Without a stay, "the parties would have to

conduct multiple depositions of the same witnesses because of their ability to speak only to the

['482] patent while the ['251 patent is] stayed." *Arris Enters. LLC*, 2017 WL 3283937, at **2-4.

There "will also be significant overlap in discovery in other respects because of the similar

technology and products asserted in both the ITC proceeding," and the two cases before this Court.

*Id.* ("recognizing the potential burden for both parties stemming for duplicative efforts, the Court

finds that the potential hardship from denying the stay weighs in favor of granting it").

    In particular, expert witnesses will have to prepare separate sets of reports, ███████████

████████████████████████████████████████████████████████████████████

████████████████ and likely be subject to multiple depositions and trial appearances. Resources

and expenses will be duplicated in order to meet the demands necessitated by having to litigate

common issues in separate forums, such as preparing the same witnesses for, and defending the

witnesses in, more than one deposition, preparing for and taking multiple depositions of the same

witnesses, preparing duplicate motions on the same common issues, etc. Staying the '482 patent

claims against DuPont and FTS will obviate the need for these redundant and costly efforts. *See,*

*e.g., FormFactor, Inc. v. Micronics Japan Co., Ltd.*, Case No. CV-06-07159, 2008 WL 361128,

*2 (N.D. Cal. Feb. 11, 2008) (case stayed to avoid "potential duplication of discovery resulting

from continuing the proceedings for the non-overlapping patents at issue but not those overlapping

patents automatically stayed by statute"); *Graphic Props. Holdings, Inc. v. Toshiba Info. Sys., Inc.*,

Case No. 12-213-LPS, 2014 WL 923314, at *2 (D. Del. Mar. 5, 2014) ("By not having to litigate

substantially similar matters in both the ITC and this Court" the parties "will not have to engage in duplicative discovery and other pretrial matters.").

Having the '482 patent allegations against DuPont and FTS "proceed on two different schedules" from the allegations against DuPont regarding the '251 patent "also does not serve the interest of judicial economy." *Arris Enters.*, 2017 WL 3283937, at *4. Absent a stay, "the Court would be compelled to empanel two juries and conduct pretrial proceedings in separate sequence." *Id.* (finding that this factor "weighs strongly in favor of granting the stay"). The Court "will hold status conferences and hearings and address discovery disputes only to be faced with many of these same issues after the stay is lifted." *Graphic Props.*, 2014 WL 923314, at *2. As one district court has explained:

> The prospect of proceeding on half of this case now while the other half is abated is not one any court would deem efficient, or one any party to litigation should embrace. One patent infringement case is complex enough, but creating two cases out of one, each with separate discovery deadlines, claim construction hearings, dispositive motions, and trials, is unnecessarily burdensome and an unwise allocation of judicial resources.

*Arris Sols.*, 2017 WL 4536415, at *2.

By staying the '482 patent claims against both DuPont and FTS, the "Court will not have to engage in duplicative proceedings regarding the ['251] Patent that could be held in conjunction with the ['482] Patent." *Graphic Props.*, 2014 WL 923314, at *2. Simply put, a stay "will result in tremendous savings of judicial time and resources" by "substantially reduc[ing] the amount of duplicative time and effort the parties and the Court will have to" expend. *Id.*

Additionally, even though ITC rulings are not binding on this Court, the ITC rulings and discovery can still benefit the consolidated cases before this Court. *Arris Sols.*, 2017 WL 4536415, at *4. Indeed, "the substantial similarities between the patents," as described above, "means the proceedings before the ITC will undoubtedly and valuably inform the parties and the court once

they conclude." *Id.*, at *2; *SanDisk*, 538 F. Supp. 2d at 1067 ("It is true that any decision reached by the International Trade Commission will have no preclusive effect on the district court. However, the record developed in the proceeding before the commission may be used to 'expedite proceedings and provide useful information to the court.'").

A stay will also ensure avoiding inconsistent results across multiple proceedings, including inconsistent factual findings regarding the identical DuPont Products at issue here and before the ITC, ███████████████████████████████████████ and/or inconsistent claim constructions of the same or similar claim terms that are present in both patents. For example, the design, manufacture, testing, structure, and functionality of the DuPont Products (████████████████ will be relevant here and in the ITC proceeding, and will also largely overlap with those issues as they concern the █████████████ FTS Products that are at issue here. The same issues concerning Kirsch's allegedly patented products will likewise be involved in all three proceedings. (Lead Case, Dkt. No. 1, ¶¶ 45-47 (describing "Sharkskin" products); Consolidated Case, Dkt. No. 1, ¶¶34-36; Ex. A, ¶¶104-10.) Even though the patents are not formally related, they nevertheless share common as well as similar claim terms, whose constructions will be relevant to one another as both patents issued to the same inventor. A general overview of roof underlayment technology will likewise be relevant to all three proceedings, and there will likely be a significant overlap in prior art and secondary indicia of nonobviousness. Marketing and sales information, specifically, and damages evidence, more generally, will also intersect greatly across all cases.

The significant possibilities regarding inconsistencies in factual and legal findings, and inefficiencies from exploring these common issues in separate proceedings, weighs heavily in favor of staying the '482 patent claims against DuPont and FTS while these issues are addressed

in the ITC investigation. *Avago*, 2013 WL 623042, at *3. Any remaining issues can readily be dealt with by the Court, in a single consolidated proceeding, after final disposition of the ITC investigation, resulting in a more efficient and less costly procedure that avoids the potential for inconsistent legal and factual findings. *See Black Hills*, Dkt. No. 63 at 2 (stay granted in view of parallel ITC investigation based in part on fact that ITC and non-overlapping patents shared "common issues of both law and fact that are best considered in a single proceeding"). This factor weighs heavily in favor of staying the '482 patent allegations against DuPont and FTS.

### 3.      Discovery Has Not Begun and a Trial Date Has Not Been Set

These cases have only begun, with essentially nothing of substance having taken place since Kirsch filed its Complaint on April 24, 2020. DuPont's answer is presently due on July 6, 2020 while FTS's answer is due July 10. A case management conference has not been scheduled, discovery has not begun, and a scheduling order has not been entered in either case. As a result, substantial litigation-related costs have not yet been incurred by the parties. *See, e.g.*, *Alloc, Inc. v. Unilin Décor N.V.*, Case No. 03-253-GMS, 2003 WL 21640372, *3 (D. Del. July 11, 2003) (that parties had not yet incurred litigation-related expenses weighed in favor of stay). This factor thus also weighs heavily in favor of staying the consolidation-pending DuPont and FTS cases before the Court in their entirety.

## IV.    <u>CONCLUSION</u>

For all these reasons, DuPont and FTS respectfully request the Court issue a mandatory stay of Kirsch's claims against DuPont regarding the '251 patent, and exercise its discretion to stay Kirsch's claims against DuPont and FTS regarding the '482 patent, pending final disposition of the parallel proceedings before the ITC in *Certain Synthetic Roofing Underlayment Products and Components Thereof*, Inv. No. 337-TA-1202.

Respectfully submitted,


*/s/ Jennifer H. Doan*
Jennifer H. Doan
Texas Bar No. 08809050
J. Randy Roeser
Texas Bar No. 24089377
Haltom & Doan
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: 903.255.1000
Facsimile: 903.255.0800
Email: jdoan@haltomdoan.com
Email: rroeser@haltomdoan.com

Kathryn L. Clune (DC Bar No. 468784)
Crowell & Moring LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: 202.624.2705
kclune@crowell.com

Jacob Z. Zambrzycki (NY Bar No. 4786240)
Crowell & Moring LLP
590 Madison Ave., 20th Floor
New York, NY 10022
Telephone: 212.803.4012
jzambrzycki@crowell.com

**DEFENDANTS DUPONT DE NEMOURS,
INC.; E.I. DU PONT DE NEMOURS AND
COMPANY; FT SYNTHETICS, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 25th day of June, 2020.

/s/ *Jennifer H. Doan*
Jennifer H. Doan

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel for Defendants, Kathryn Clune, met and conferred via telephone conference with counsel for Kirsch, Amy Hayden, on May 13, 2020. Counsel for Kirsch indicated that Kirsch does not oppose the mandatory stay with respect to the '251 patent allegations against DuPont, but that it does oppose the remaining relief requested.

/s/ *Jennifer H. Doan*
Jennifer H. Doan

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that, concurrently with the foregoing, I have filed Defendants' Unopposed Motion for Leave to File Under Seal their Motion to Stay.

/s/ *Jennifer H. Doan*
Jennifer H. Doan